UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| MELANIE J.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:25-cv-00146<br><br>Magistrate Judge Daphne A. Oberg |

Melanie J.[1] brought this action for judicial review of the denial of her application for supplemental security income.[2] The Administrative Law Judge (ALJ) who addressed her application determined she did not qualify as disabled.[3] Ms. J. claims the ALJ failed to properly evaluate her mental impairments and suicidal ideation.[4] As explained below, the ALJ applied the correct legal standards, and substantial evidence supports his findings. Accordingly, the Commissioner's decision is affirmed.[5]

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to the plaintiff by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–33, Doc. No. 11.)

[4] (Opening Br. 6, Doc. No. 12.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 5.)

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the decision to determine whether substantial evidence supports the ALJ's factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[12]

---

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

To determine if a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) she has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) she has the residual functional capacity to perform past relevant work; and
5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

[13] 42 U.S.C. § 1382c(a)(3)(A).

[14] *Id.* § 1382c(a)(3)(B).

[15] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. J. applied for supplemental security income under Title XVI of the Social Security Act.[18] After an administrative hearing,[19] the ALJ found Ms. J. not disabled and denied benefits.[20]

At step two of the sequential evaluation, the ALJ found Ms. J. had the severe impairments of "mild degenerative disc disease and facet degenerative changes of the lumbar spine; obesity; major depressive disorder; unspecified anxiety disorder; attention deficit hyperactivity disorder; and post-traumatic stress disorder."[21] At step three, the ALJ concluded her impairments did not meet or medically equal an impairment listing.[22]

The ALJ then found Ms. J. had the residual functional capacity (RFC) to perform "light work" with the following limitations:

> [S]he is able to lift and/or carry 10 pounds up to 2/3 of an 8-hour workday and 20 pounds up to 1/3 of an 8-hour workday; stand and/or walk for 6 hours and sit for 6 hours of an 8-hour workday; she can climb ladders, ropes,

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 172–81); 42 U.S.C. §§ 1381–1385.

[19] (Tr. 38–56.)

[20] (Tr. 17–33.)

[21] (Tr. 19.) The ALJ also found Ms. J.'s arthritis was not medically determinable, or, alternatively, it constituted a nonsevere impairment. (Tr. 20.)

[22] (Tr. 20–22.)

> scaffolds, stairs, or ramps for less than 1/3 of an 8-hour workday and perform all other postural activities up to 1/3 of an 8-hour workday; she should avoid concentrated exposure to hazardous conditions; mentally, she is able to perform simple job instructions in a low stress work environment—i.e., no fixed, high production quotas.[23]

At step four, the ALJ found Ms. J. had no past relevant work.[24] But at step five, based on the RFC assessment and the testimony of a vocational expert, the ALJ found Ms. J. capable of other jobs in the national economy.[25] Accordingly, the ALJ found Ms. J. not disabled and denied her claim.[26] This decision became final when the Appeals Council denied Ms. J.'s request for review.[27]

## ANALYSIS

Ms. J. claims the ALJ failed to properly evaluate her mental impairments throughout the decision.[28] She specifically argues the ALJ erred by failing to discuss the impact of her suicidal ideation at steps two and three of the sequential evaluation, and in the RFC determination.[29] As explained below, any error at steps two and three was harmless, and Ms. J.'s conclusory argument regarding the RFC determination is insufficient to show error.

---

[23] (Tr. 22.)

[24] (Tr. 31.)

[25] (Tr. 32–33.)

[26] (Tr. 33.)

[27] (Tr. 1–3.)

[28] (Opening Br. 6, Doc. No. 12.)

[29] (*See id.* at 7–11.)

A. Steps Two and Three

At steps two and three of the sequential evaluation process, an ALJ must rate the degree of limitation resulting from medically determinable mental impairments in four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[30] These criteria are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."[31] The ALJ must rate the claimant's degree of limitation in each area on a five-point scale: none, mild, moderate, marked, or extreme.[32] At step two, a mental impairment is not severe if it results in no more than mild limitations in these areas.[33] At step three, to meet the requirements of "paragraph B" of the mental disorder listings, the claimant must have "extreme limitation of one, or marked limitation of two, paragraph B areas."[34]

Ms. J. contends the ALJ erred by failing to consider her suicidal ideation in evaluating the "paragraph B" criteria at steps two and three.[35] The ALJ found Ms. J. had a moderate limitation in the area of concentrating, persisting, or maintaining pace,

---

[30] *See* 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E.

[31] SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996).

[32] *See* 20 C.F.R. § 416.920a(c)(4); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[33] *See* 20 C.F.R. § 416.920a(d)(1).

[34] 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[35] (Opening Br. 7–10, Doc. No. 12.)

and mild limitations in the other three functional areas.[36] Ms. J. protests that the ALJ's discussion of the evidence in this section does not mention suicidal ideation, despite numerous records documenting it during the relevant period.[37] And Ms. J. contends consistent suicidal thoughts may impact all areas of mental functioning, but particularly a claimant's ability to adapt and manage.[38]

It is unnecessary to decide whether the ALJ erred by failing to mention suicidal ideation in evaluating the "paragraph B" criteria because any error was harmless. An ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."[39] This is because "[a]s long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step."[40] Where the ALJ found all Ms. J.'s claimed mental impairments severe at step two and proceeded through the remaining steps, any step-two error was harmless.

Likewise, any step-three error was harmless because Ms. J. does not point to medical evidence supporting a finding of "extreme limitation of one, or marked limitation of two, paragraph B areas," as necessary to meet the requirements of the mental

---

[36] (Tr. 21–22.)

[37] (*See* Opening Br. 7–10, Doc. No. 12.)

[38] (*Id.* at 8.)

[39] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

[40] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4).

disorder listings.[41] She identifies no medical opinion evidence at all supporting an "extreme" limitation in any "paragraph B" area. Instead, Ms. J. suggests she had "marked" limitations, pointing to her treating therapist's opinion that she was markedly limited in "responding to requests, suggestions, criticism, correction, and challenges," and "keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness."[42] Ms. J. suggests this opinion implicates two "paragraph B" areas: adapting and managing oneself, and interacting with others.[43] But while the therapist listed suicidal ideation as one of Ms. J.'s "clinical findings and objective signs" (among others),[44] there is no indication she based her opinion regarding marked limitations on this suicidal ideation. Moreover, the ALJ provided detailed reasons for finding the therapist's opinion unpersuasive—reasons Ms. J. does not challenge.[45] And Ms. J. points to no other opinion evidence supporting a finding of marked limitations in two or more "paragraph B" areas. On this record, Ms. J. simply

---

[41] 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2; *see also Lax*, 489 F.3d at 1085 ("To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment.").

[42] (Tr. 669–70.)

[43] (Opening Br. 10, Doc. No. 12.)

[44] (Tr. 669.)

[45] (*See* Tr. 30 (discussing the April 22, 2024 opinion of Heather Johnson, LCSW).) The ALJ found the therapist's opinion unpersuasive because she did not support her opinions with explanations, she had treated Ms. J. for only three months, her process notes did not contain mental status examination findings, and mental status examinations in contemporaneous treatment records from another source did not support marked limitations. (*Id.*) Ms. J. does not challenge any of the ALJ's stated reasons for rejecting the therapist's opinion.

has not identified medical evidence sufficient to establish she met the "paragraph B" criteria of a mental disorder listing. For these reasons, the ALJ's failure to mention her suicidal ideation at steps two and three of the sequential evaluation was harmless.

Ms. J.'s reliance on *Glaser v. Bisignano*[46] does not compel a different result. In *Glaser*, the court found an "ALJ's failure to acknowledge or address [the plaintiff's] repeated suicidal ideations and attempts . . . was plainly in error," and the error was "material and not subject to any form of harmless error analysis."[47] But *Glaser* differs from this case in critical ways. First, *Glaser* does not support the notion that harmless error analysis is unavailable for findings at steps two and three of the sequential evaluation. In *Glaser*, the court instead addressed an ALJ's failure to mention suicidal ideations and attempts in the RFC evaluation.[48] Moreover, the plaintiff in *Glaser* was psychiatrically hospitalized and attempted suicide—facts the ALJ failed to acknowledge.[49] Here, by contrast, Ms. J. had no psychiatric hospitalizations or documented suicide attempts during the relevant time period. And the ALJ acknowledged her suicidal ideation in his RFC evaluation (as noted below).[50] Accordingly, *Glaser* does not change the conclusion that the ALJ's failure to mention

---

[46] No. 4:23-CV-1922, 2025 U.S. Dist. LEXIS 220174 (M.D. Pa. Nov. 7, 2025) (unpublished).

[47] *Id.* at *32.

[48] *Id.* at *31.

[49] *See id.* at *1–2.

[50] (*See* Tr. 26.)

suicidal ideation in evaluating the "paragraph B" criteria was harmless (even assuming it amounted to error).

B. RFC Determination

Ms. J.'s argument regarding the RFC determination is so conclusory, she has failed to show error. A claimant's RFC is the most she can do in a work setting considering her limitations.[51] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[52] The ALJ considers all relevant medical and other evidence in the record.[53]

At the outset, Ms. J. identifies the sole "question[] presented" in this action as "whether the ALJ erred by failing to properly evaluate [her] mental impairments at steps two and three of the sequential evaluation."[54] She does not explicitly claim error relating to the RFC assessment. But in the argument section of her brief, Ms. J. contends her "longitudinal history of suicidal ideation . . . must be considered as to how it would impact [her] mental impairments and her RFC."[55] She then asserts: "the ALJ failed to resolve clear inconsistencies with the medical record showing persistent suicidal ideation and his own decision that fails to acknowledge this severe symptom[]

---

[51] *See* 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2.

[52] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[53] 20 C.F.R. § 416.945(a)(3).

[54] (Opening Br. 2, Doc. No. 12.)

[55] (*Id.* at 10.)

of [her] mental impairments."[56] Elsewhere in her motion, Ms. J. notes the ALJ only mentioned one report of suicidal ideation (due to back pain), but not other reports of suicidal ideation relating to her mental impairments.[57]

Ms. J.'s argument regarding the RFC assessment is conclusory and insufficient to demonstrate error. The ALJ included mental limitations in the assessed RFC, limiting Ms. J. to "simple job instructions in a low stress work environment—i.e., no fixed, high production quotas."[58] And Ms. J. does not identify any specific, additional limitations the ALJ should have included in the RFC based on her suicidal ideation.[59]

Further, the record reflects the ALJ considered Ms. J.'s suicidal ideation, even if he did not discuss it in detail.[60] For example, the ALJ noted that on one occasion, Ms. J. "contacted the crisis line" due to depression, but she "did not require hospitalization."[61] The cited record indicates Ms. J. had "passive suicidal ideations,"

---

[56] (*Id.* at 11.)

[57] (*See id.* at 8–10; *see also* Tr. 26 (ALJ's statement that "[o]n December 21, 2022, the claimant called Davis Behavioral Health and stated that she was having suicidal ideation due to her back pain").)

[58] (Tr. 22.)

[59] *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (unpublished) (finding no error in an RFC assessment where the claimant "[did] not identify any functional limitations that should have been included in the RFC").

[60] *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (citation omitted)).

[61] (Tr. 28 (citing Tr. 653).)

and was “contracting for safety.”[62] Though limited, the ALJ’s discussion of this record shows he considered Ms. J.’s suicidal ideation and noted it did not rise to a level requiring psychiatric hospitalization. In his discussion of her mental health treatment, the ALJ also cited other records documenting Ms. J.’s reports of suicidal ideation.[63] Additionally, the ALJ expressly acknowledged Ms. J.’s report of suicidal ideation relating to back pain.[64]

In sum, the record shows the ALJ considered evidence of Ms. J.’s suicidal ideation in determining her RFC. Where Ms. J. does not identify specific functional limitations the ALJ should have included, she has not shown he needed to incorporate a more detailed discussion of her suicidal ideation in the RFC determination.

**CONCLUSION**

The Commissioner’s decision is affirmed.

DATED this 8th day of September, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

[62] (Tr. 653.)

[63] (*See, e.g.*, Tr. 21 & 25 (citing Tr. 363 (hearing exhibit 1F/56, documenting suicidal ideation)); Tr. 26 (citing Tr. 460 (hearing exhibit 2F/18, documenting “passive” suicidal ideation)).

[64] (Tr. 26.)